1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11
   MATTHEW BANTIQUE,
12                                      NO. CIV. 09-663 WBS DAD
            Plaintiff,
13
        v.                              <u>MEMORANDUM AND ORDER RE:</u>
14                                      <u>MOTION TO DISMISS</u>
   GREENPOINT MORTGAGE FUNDING,
15 INC., business entity, form
   unknown; PREMIER FUNDING
16 GROUP, INC., business entity,
   form unknown; GMAC MORTGAGE,
17 business entity, form unknown;
   EMC MORTGAGE CORPORATION,
18 business entity, form unknown;
   T.D. SERVICE COMPANY OF
19 ARIZONA, business entity, form
   unknown; MORTGAGE ELECTRONIC
20 REGISTRATION SYSTEMS, INC.,
   business entity, form unknown;
21 all persons unknown, claiming
   any legal or equitable right,
22 title, estate, lien, or
   interest in the property
23 described in this Complaint
   adverse to Plaintiff's title
24 thereto; and DOES 1 through
   25, inclusive,
25
            Defendants.
26 _____/

27
                          ----oo0oo----
28

                               1

Plaintiff Matthew Bantique brought this action in state court against Greenpoint Mortgage Funding Inc. ("Greenpoint"), Premier Funding Group Inc. ("Premier"), GMAC Mortgage ("GMAC"), EMC Mortgage Corporation ("EMC"), T.D. Service Company of Arizona ("TDS"), and Mortgage Electronic Registration Systems Inc. ("MERS") seeking declaratory relief and rescission and alleging breach of the implied covenant of good faith and fair dealing, fraud, breach of fiduciary duty, quiet title, and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, with respect to the refinancing of the first and second mortgages on his home in Vallejo, California. EMC and MERS now move to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   <u>Factual and Procedural Background</u>

In December 2005, plaintiff contacted Premier, a real estate brokerage company, in order to refinance the first and second mortgages on his home located at 100 Matthew Court in Vallejo, California ("Subject Property"). (Compl. ¶¶ 3, 15, 17.) Premier instructed plaintiff to complete a loan application, and the parties then engaged Greenpoint to serve as the lender. (<u>Id.</u> ¶¶ 18-19.) Greenpoint completed a Uniform Residential Lending Application Form for plaintiff, and plaintiff then signed an Income Tax Disclosure Form to permit Premier and Greenpoint to investigate his income. (<u>Id.</u> ¶ 19.) However, Premier and Greenpoint allegedly approved plaintiff's loan application without attempting to verify plaintiff's income. (<u>Id.</u>)

Thereafter, plaintiff signed a promissory note in favor

2

of Greenpoint for $656,000 dated December 16, 2005, in order to refinance plaintiff's first mortgage. (Id. ¶ 1.) This note was secured by a Deed of Trust on the Subject Property, which was executed on December 30, 2005. (Id.) Plaintiff also signed a promissory note in favor of Greenpoint for $82,000 dated December 16, 2005, in order to refinance plaintiff's second mortgage. (Id.) This note was also secured by a Deed of Trust on the Subject Property and was executed on December 16, 2005. (Id.)

Plaintiff alleges that during the loan application process, Premier failed to provide him with a Mortgage Loan Origination Agreement in violation of California law. (Id. ¶ 21.) Plaintiff further alleges that both Premier and Greenpoint failed to provide him with certain disclosures required by the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. (Id. ¶¶ 22, 26.) Specifically, plaintiff alleges that he did not receive a "Right to Cancel" form required by 12 C.F.R. §§ 226.17 and 226.23 (promulgated under TILA) or the disclosures required by 24 C.F.R. § 3500.6(a) (promulgated under RESPA). Plaintiff also alleges that he did not receive certain disclosures required by California Civil Code section 1916.7(c) for adjustable rate loans or a copy of the appraisal of his home as required by California Business and Professions Code section 10241.3. (Id. ¶¶ 23-24.) In addition, certain characteristics of plaintiff's loan, such as its manner of amortization, payment schedule, and prepayment provision, also allegedly violated California Civil Code sections 1916.7(a)(8) and (b). (Id. ¶ 27.)

MERS is the nominee/beneficiary for Greenpoint and is

3

listed as the beneficiary of the Deeds of Trust executed on
December 16 and 30, 2005. (<u>Id.</u> ¶ 2.) At some point in time,
MERS allegedly authorized TDS to substitute as the trustee of the
Deeds of Trust. (<u>Id.</u> ¶ 4.) EMC is currently servicing the loan
originated by Greenpoint in the amount of $656,000, and GMAC is
currently servicing the loan originated by Greenpoint in the
amount of $82,000. (<u>Id.</u> ¶ 6.)

On July 10, 2008, a Notice of Default on these loans
was recorded in the Solano County Recorder's Office, and a Notice
of Trustee's sale was then entered on October 14, 2008. (<u>Id.</u> ¶
28.) With the Trustee's Sale scheduled for November 3, 2008,
plaintiff sent EMC and GMAC a Notice of Cancellation pursuant to
TILA and California law on October 30, 2008. (<u>Id.</u> ¶ 29.) On
that date, plaintiff also filed a Complaint against the
aforementioned parties in Solano County Superior Court seeking
declaratory relief and rescission and alleging breach of the
implied covenant of good faith and fair dealing, fraud, breach of
fiduciary duty, quiet title, and violations of the UCL. (<u>See</u>
Docket No. 1.) The action was subsequently removed to this court
under federal question jurisdiction on March 10, 2009. (<u>Id.</u>)
MERS and EMC (together, "defendants") now move to dismiss
plaintiff's Complaint pursuant to Federal Rule of Civil Procedure
12(b)(6) for failure to state a claim upon which relief can be
granted.

II. <u>Discussion</u>

    A.   <u>Legal Standard</u>

On a motion to dismiss, the court must accept the
allegations in the complaint as true and draw all reasonable

4

inferences in favor of the plaintiff. <u>Scheuer v. Rhodes</u>, 416

U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.

Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

(1972). To survive a motion to dismiss, a plaintiff needs to

plead "only enough facts to state a claim to relief that is

plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

544, 570 (2007). Dismissal is appropriate, however, where the

plaintiff fails to state a claim supportable by a cognizable

legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696,

699 (9th Cir. 1990); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47

(1957) (complaint must "give the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests"),

<u>abrogated on other grounds by</u> <u>Twombly</u>, 550 U.S. at 563.

     B.  <u>Declaratory Relief</u>

     Plaintiff requests a judicial declaration that

"defendants' security interest in the Subject Property has been

rendered void . . . pursuant to [TILA] . . . when plaintiff sent

his cancellation notice." (Compl. ¶ 31.) Relying on the Ninth

Circuit's decision in <u>Yamamoto v. Bank of New York</u>, 329 F.3d

1167, 1172 (9th Cir. 2003), defendants contend that plaintiff's

request for declaratory relief is "premature" because "the loan

transaction is not void until there has been a determination that

rescission is warranted." (Mem. Supp. Mot. Dismiss 9:7-9.) In

<u>Yamamoto</u>, the Ninth Circuit held:

> [I]t cannot be that the security interest vanishes
> immediately upon the giving of notice. Otherwise, a
> borrower could get out from under a secured loan simply
> by claiming TILA violations, whether or not the lender
> had actually committed any. Rather, under the statute
> and the regulation, the security interest "becomes void"
> only when the consumer "rescinds" the transaction. In a

5

contested case, this happens when the right to rescind is determined in the borrower's favor.

Id. at 1172.

While plaintiff's notice of cancellation alone was insufficient to void his loan agreements, this does not preclude him from requesting declaratory relief while simultaneously alleging a claim for rescission in his Complaint. (See Compl. 11:6-8); see also infra Section II.E. Adjudication of plaintiff's request for declaratory relief will implicitly require the preliminary step of determining the merits of his rescission claim; consequently, the court sees no persuasive reason to require plaintiff to file a subsequent action for declaratory relief only after "the right to rescind is determined in [his] favor."[1] Cf. Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

Defendants further contend that declaratory relief is inappropriate because "there is no present controversy between defendants and plaintiff." (Reply 3:3; see Mem. Supp. Mot. Dismiss 10:19-20.) Although California courts have long held that declaratory relief "operates prospectively, and not merely for the redress of past wrongs," Babb v. Superior Court, 3 Cal.

---

[1] Defendants also argue that any judicial declaration that their security interest is void due to rescission must fail because plaintiff has not made an "offer to pay the lender what [he] received in the original mortgage transaction." (Mem. Supp. Mot. Dismiss 9:14-15.) Defendants raise this same argument with respect to plaintiff's rescission claim, and for the reasons stated in that discussion, the court must also reject this argument as to plaintiff's request for declaratory relief. See infra Section II.E.

3d 841, 848 (1971) (quoting <u>Travers v. Louden</u>, 254 Cal. App. 2d
926, 931 (1967)), the court cannot agree with defendants'
characterization of plaintiff's request for declaratory relief as
"unnecessary and improper because there is no occasion to guide
the future conduct of [plaintiff] and [defendants]" (Reply 3:24-
26). Plaintiff does "not merely" wish to redress the alleged
fraud committed by defendants; rather, he seeks to void the
prospective existence of defendants' security interest in the
subject property.

      Defendants' argument that declaratory relief is
improper as to EMC because "EMC has no interest in the subject
loan or subject [Deed of Trust]" is also without merit. (Mem.
Supp. Mot. Dismiss 11:6.) The Complaint alleges that EMC "is the
company currently servicing the loan originated by GREENPOINT for
$656,000.00." (Compl. ¶ 6.) Although further factual
development is necessary to precisely define the nature of EMC's
role with respect to the loan, RESPA defines "loan servicing" as
"receiving any scheduled periodic payments from a borrower
pursuant to the terms of any loan . . . and making the payments
of principal and interest and such other payments with respect to
the amounts received from the borrower as may be required
pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). In
light of this definition and the allegations in the Complaint,
the court cannot conclude that, as a matter of law, EMC "has no
interest in the subject loan or subject [Deed of Trust]"; rather,
plaintiff's request for declaratory relief in this case is proper
to determine the "nature of" the parties' "rights and
obligations." <u>Meyer v. Sprint Spectrum L.P.</u>, 45 Cal. 4th 634,

647 (2009).

In his Complaint, plaintiff also requests a declaratory judgment establishing that defendants "do not have the right to foreclose on the Subject Property because [they] do not own or have possession of the Promissory Notes secured by the Deeds of Trust." (Compl. ¶ 31.) However, the allegation that defendants do not own or possess the relevant promissory notes cannot, standing alone, establish that defendants "do not have the right" to initiate a foreclosure proceeding. See Putkkuri v. Recontrust Co., No. 08-1919, 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009) ("Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Production of the original note is not required to proceed with a non-judicial foreclosure." (citation omitted)); accord Pagtalunan v. Reunion Mortgage Inc., No. 09-162, 2009 WL 961995, at *2 (N.D. Cal. Apr. 8, 2009) ("California law does not require possession of the note as a precondition to non-judicial foreclosure under a deed of trust . . . ."). Accordingly, because plaintiff's sole allegation as to defendants' lack of authority to initiate foreclosure proceedings is insufficient as a matter of law, the court must grant defendants' motion to dismiss this aspect of plaintiff's request for declaratory relief.

Finally, the Complaint simultaneously alleges that MERS is a "Delaware corporation" as well as a "suspended California corporation." (Compl. 2:18, 3:1.) Because MERS is allegedly a "suspended California corporation," plaintiff further alleges that MERS "does not have legal capacity to maintain a foreclosure

proceeding" and also was unauthorized to substitute TDS as trustee on the Deeds of Trust. (<u>Id.</u> ¶ 4.)

In a practically identical, formulaic complaint in the Northern District of California, plaintiff's counsel made this same allegation against MERS but ultimately "concede[d]" that the allegation was "incorrect and should be stricken" because counsel had "confused Mortgage Electronic Registration System with Mortgage Electronic Registration System**s**." <u>Paqtalunan v. Reunion Mortg. Inc.</u>, No. 09-162, 2009 WL 961995, at *5 (N.D. Cal. Apr. 8, 2009).[2] Here, plaintiff's allegations are contradictory, confusing, and apparently false; they have prompted the parties to engage in a bizarre dispute--divorced from the pleadings--over whether MERS's activities are such that it need be a licensed foreign corporation. (<u>See</u> Opp'n 4-5; Reply 10-11.) Accordingly, the court will strike these allegations and grant plaintiff leave to amend his Complaint. <u>See</u> Fed. R. Civ. P. 12(f) (providing that the "[t]he court may act . . . on its own" to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter").

C. <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

---

[2]     "[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss." <u>In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996) (collecting cases), <u>rev'd on other grounds by</u> <u>Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998).

9

Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)). "A typical formulation of the burden imposed by the implied covenant of good faith and fair dealing is 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005) (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

As alleged in the Complaint, "EMC is the company currently servicing the loan originated by GREENPOINT for $656,000.00." (Compl. ¶ 6.) There is no allegation that EMC is in contractual privity with plaintiff, and consequently the implied covenant of good faith and fair dealing is inapplicable. See, e.g., Smith v. City & County of San Francisco, 225 Cal. App. 3d 38, 49 (1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."); Moore v. Chase Bank, No. 08-350, 2008 WL 961161, at *8 (N.D. Cal. Apr. 7, 2008) (dismissing a plaintiff's claim for breach of the implied covenant of good faith and fair dealing where "[n]othing in the record indicate[d] that [defendant] [was] anything but the loan servicer" and thus there was "no agreement between [plaintiff] and [defendant]").

In opposition to the instant motion to dismiss, plaintiff contends that "there is a contract implied in law between the parties" because EMC has been "unjustly enriched" at the expense of plaintiff. (Opp'n 11:5-9 (citing Ghirardo v.

10

*Antonioli*, 14 Cal. 4th 39, 51 (1996)).) "'The focus of any Rule 12(b)(6) dismissal,'" however, "'is the complaint.' This precludes consideration of 'new' allegations that may be raised in a plaintiff's opposition to a motion to dismiss . . . ." *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1128 (S.D. Cal. 2007) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

Furthermore, even if plaintiff and EMC were in contractual privity, the alleged conduct constituting a breach of the implied covenant of good faith and fair dealing occurred before the consummation of plaintiff's loans. (*See* Compl. ¶ 40 (alleging that "defendants" prepared a fraudulent loan application, failed to verify plaintiff's information, approved plaintiff's application based on false information, misled plaintiff regarding fees associated with the loans, failed to tell plaintiff that he was likely to default, and did not inform plaintiff that the Deeds of Trust and promissory notes would be part of a pooling and servicing agreement).) Such pre-formation conduct cannot constitute a breach of the implied covenant of good faith and fair dealing. *See, e.g.*, *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008) ("[T]he implied covenant is a supplement to an *existing* contract, and thus it does not require parties to negotiate in good faith *prior to* any agreement." (emphasis added)); *see also* *Paqtalunan*, 2009 WL 961995, at *2 ("Plaintiffs' second claim [for breach of the implied covenant of good faith and fair dealing] suffers the same defect as the claim in *McClain*, as all of the acts complained of occurred during pre-contractual negotiations."); *Quezada v. Loan*

Ctr. of Cal., Inc., No. 08-177, 2008 WL 5100241, at *9 (E.D. Cal. Nov. 26, 2008) ("To the extent that plaintiff's claim is based on defendants' participation in the marketing, promotion, or distribution of her loan before consummation . . . , the implied covenant of good faith and fair dealing is inapplicable.").

Accordingly, because the Complaint does not allege any contractual relationship between plaintiff and EMC nor any bad-faith conduct subsequent to the consummation of plaintiff's loans, the court must dismiss plaintiff's claim against EMC for breach of the implied covenant of good faith and fair dealing.

D.    Fraud

Under California law, a claim of fraud has the following elements: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)) (internal quotation marks omitted).

Here, EMC contends that plaintiff cannot state a claim for fraud because EMC, as the alleged servicer of plaintiff's loan, does not owe plaintiff any fiduciary duty. (Mem. Supp. Mot. Dismiss 13:4-18.) EMC further contends that "[e]ven if there [is] a fiduciary relationship between [p]laintiff and EMC, the claim for fraud fails because EMC was in no way involved in the loan transaction at issue." (Id. at 13:19-20.)

As an initial matter, fraud claims that are not premised on theories of "constructive fraud" are not limited to

12

fiduciary relationships, and there is no indication that plaintiff's claim is so cabined. <u>See, e.g.</u>, <u>Younan v. Equifax Inc.</u>, 111 Cal. App. 3d 498, 516-17 (1980) ("Unlike actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some kind, and this must be alleged."); (<u>see also</u> Compl. ¶ 52 (alleging "actual fraud" as defined by California Civil Code section 1572)).

Furthermore, plaintiff is not required to allege his fraud claim exclusively against the lender that originated the allegedly fraudulent loan. Rather, if EMC knew that the original lender's conduct breached a duty to disclose and if EMC provided substantial assistance to that conduct, EMC may be liable under an aiding-and-abetting theory. <u>See</u> <u>In re First Alliance Mortgage Co.</u>, 471 F.3d 977, 993 (9th Cir. 2006) (upholding a verdict against defendant for fraud where the defendant securitized loans that it knew were fraudulently originated and provided substantial assistance to the original lender) (citing <u>Casey v. U.S. Bank N.A.</u>, 127 Cal. App. 4th 1138 (2005)). Therefore, to the extent that the original lender's conduct amounted to fraud, plaintiff's allegation that EMC "aided and abetted PREMIER FUNDING and GREENPOINT in these violations by concealing and attempting to conceal them from [plaintiff]" (Compl. ¶ 66) presents a cognizable legal theory under which EMC could also be liable for fraud.

EMC finally argues that plaintiff "fails to properly plead [his] fraud claim with the requisite degree of specificity under California law." (Mem. Supp. Mot. Dismiss 13:23-24.) "[I]t no longer can be doubted," however, "that the rules

regarding the standard of specificity to be applied to federal pleadings . . . are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1204 (2008) (collecting cases).  EMC joined in the removal of this case from California Superior Court to federal court (Docket No. 1), and it must now frame its arguments accordingly.

Although California's heightened pleading requirements do not apply to this case, Federal Rule of Civil Procedure 9(b) similarly provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Nonetheless, plaintiff's fraud claim appears to allege a form of fraudulent concealment (see, e.g., Compl. ¶¶ 21-22 (detailing the various disclosures plaintiff allegedly did not receive with respect to his loan)), and "a plaintiff in a fraudulent concealment suit will 'not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'"  Portney v. CIBA Vision Corp., No. 07-854, 2008 WL 5505518, at *7 (C.D. Cal. Dec. 24, 2008) (quoting Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)).  Consequently, "[b]ecause such a plaintiff is alleging a failure to act instead of an affirmative act, . . . a fraud by omission or fraud by concealment claim 'can succeed without the same level of specificity required by a normal fraud claim.'"  Id. (quoting Falk, 496 F. Supp. 2d at 1099); see also Washington v. Baenziger, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) ("Where the fraud

14

consists of omissions on the part of the defendants, the
plaintiff may find alternative ways to plead the particular
circumstances of the fraud.").

Here, plaintiff identifies the omissions alleged to be
fraudulent, the entities allegedly required to disclose the
omitted information, and the dates upon which the disclosures
should have been provided.  (See Compl. ¶¶ 17-18, 21-27; see also
id. ¶ 50 (incorporating by reference "all preceding paragraphs"
in the Complaint as applicable to plaintiff's fraud claim).)
These allegations are sufficient to satisfy Rule 9(b).  See
Neubronner v. Milken, 6 F.3d 666, 671-72 (9th Cir. 1993) ("A
pleading is sufficient under Rule 9(b) if it identifies the
circumstances constituting fraud so that the defendant can
prepare an adequate answer from the allegations." (quoting
Gottreich v. S.F. Inv. Corp., 552 F.2d 866, 866 (9th Cir. 1977))
(internal quotation marks omitted)).

Accordingly, the court will deny defendants' motion to
dismiss plaintiff's fraud claim.

E.    Rescission/Cancellation[3]

Defendants move to dismiss plaintiff's rescission claim
because plaintiff has not alleged that he is "ready, willing, or
able to return the consideration he received . . . that is, the

---

[3]    Defendants contend that plaintiff's rescission claim
must be dismissed to the extent that it relies upon plaintiff's
fraud claim.  Specifically, defendants contend that plaintiff's
claim for rescission due to fraud must be dismissed because they
did not originate plaintiff's loan and because plaintiff has
failed to plead his fraud claim with sufficient particularity.
Because the court previously rejected these arguments with
respect to plaintiff's fraud claim, see supra Section II.D, it
must also reject these arguments as they pertain to plaintiff's
claim for rescission.

15

loan amount." (Mem. Supp. Mot. Dismiss 16:13-15.) It is true that "under both federal and state law, to exercise one's right to rescind a contract, one must be ready, willing, and able to tender the property received under the contract." <u>Cosio v. Simental</u>, No. 08-6853, 2009 WL 201827, at *3 (C.D. Cal. Jan. 27, 2009) (citing 12 C.F.R. § 226.23(d)(3); <u>More v. Calkins</u>, 85 Cal. 177, 190 (1890)). Nonetheless, it is well-established that a court "can exercise its equitable discretion to modify the rescission process to, for example, allow rescission in the absence of a showing that a party can make tender." <u>Boles v. Merscorp, Inc.</u>, No. 08-1989, 2008 WL 5272196, at *2 (C.D. Cal. Dec. 12, 2008) (citing <u>Palmer v. Wilson</u>, 502 F.2d 860, 862 (9th Cir. 1974)); <u>see</u> <u>Yamamoto v. Bank of N.Y.</u>, 329 F.3d 1167, 1173 (9th Cir. 2003) ("Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds.").

Indeed, "notwithstanding the specific rescission procedures outlined in TILA, courts retain discretion to modify those procedures where warranted in a particular case." <u>Williams v. Saxon Mortgage Co.</u>, No. 06-799, 2008 WL 45739, at *4 (S.D. Ala. Jan. 2, 2008) (citing 15 U.S.C. § 1635(b)); <u>see</u> <u>Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n</u>, 683 F.2d 444, 447 (D.C. Cir. 1982) ("Although the right to rescind is statutorily granted [under TILA], it remains an equitable doctrine subject to equitable considerations."); <u>see also</u> <u>LaGrone v. Johnson</u>, 534 F.2d 1360, 1362 (9th Cir. 1976) (providing that rescission should be conditioned on the plaintiff tendering back property received

where "the violations of [TILA] [are] not egregious and the equities heavily favor the creditors"). This court expresses no opinion as to how it might exercise its discretion in this case, nor does the court mean to suggest at this stage of the proceeding that it would exercise that discretion to allow plaintiff to rescind without returning the consideration received.

In light of their "equitable discretion" to modify the rescission process, many courts have held that motions to dismiss claims for rescission on the ground that plaintiffs are unable to tender back the property received are "premature." See Jones v. Rees-Max, LLC, 514 F. Supp. 2d 1139, 1146 (D. Minn. 2007) ("Given the discretion within which the Court may condition the right to rescission, it is not necessary that the [plaintiffs] demonstrate they have the means to secure the necessary financing at this point in time."); see also Cosio, 2009 WL 201827, at *3 ("[S]imply because [plaintiffs] presently do not have sufficient funds available to make certain payments does not necessarily mean that at the time of rescission [they] will be unable to tender. Circumstances may very well change between now and the time of tender."). In light of this reasoning, plaintiff's failure to allege that he is "ready, willing, and able" to tender his loan proceeds in the event of rescission is not fatal to his claim at this early stage of the proceedings.

Defendants finally argue that plaintiff's claim for rescission must be dismissed because "a party to a contract cannot rescind when he is in default." (Mem. Supp. Mot. Dismiss 16:23 (citing Joshua Tree Townsite Co. v. Joshua Tree Land Co.,

17

100 Cal. App. 2d 590, 596 (1950)).) Defendant's contention, however, is an over-simplification. Whether or not plaintiff is currently in default on the loans in question, this fact does not affect plaintiff's claim for rescission to the extent that this claim is premised on fraud. Clearly, if the very source of plaintiff's obligation to make payments was fraudulent, the failure of plaintiff to comply with an agreement procured by fraud cannot bar his claim for rescission. As one California court explained,

> Undoubtedly, the general rule is that rescission cannot be had unless the party demanding it can and does restore the other party to status quo. . . . That theory has no application here. . . . Rather, [plaintiffs] seek to recover from the defrauding defendants all that remains salvageable of the original consideration given by [them] . . . .

Farina v. Bevilacqua, 192 Cal. App. 2d 681, 684-85 (1961) (citations omitted).

Finally, although defendants have not raised the argument, for the consistency of this Order the court must determine whether plaintiff's rescission claim against EMC should be dismissed because the Complaint fails to allege the existence of a contract between them. See supra Section II.C (dismissing plaintiff's claim for breach of the covenant of good faith and fair dealing against EMC for this same defect). Because a rescission claim by definition is predicated upon the existence of a contract, the court must also dismiss this claim against EMC. See, e.g., Medina v. Safe-Guard Prods., 164 Cal. App. 4th 105, 112 n.8 (2008); Cal. Civil Code § 1689(b); see also Demarest v. Quick Loan Funding, Inc., No. 09-1687, 2009 WL 940377, at *6 (C.D. Cal. Apr. 6, 2009) (holding that a rescission claim brought

18

1   pursuant to TILA cannot be maintained against a loan servicer).[4]

2       F.   Unfair Competition Law

3           The UCL prohibits "any unlawful, unfair or fraudulent"

4   business practice.  Cal. Bus. & Prof. Code § 17200.  The statute

5   "has a broad scope that allows for 'violations of other laws to

6   be treated as unfair competition that is independently

7   actionable' while also 'sweep[ing] within its scope acts and

8   practices not specifically proscribed by any other law.'"  Hauk

9   v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122 (9th Cir. 2009)

10  (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)).

11  Because plaintiff's Complaint alleges that, inter alia,

12  defendants aided and abetted the commission of fraudulent

13  concealment against plaintiff, it also states a claim under the

14  UCL.  Accordingly, the court will deny defendants' motion to

15  dismiss with respect to plaintiff's UCL claim.

16      G.   Quiet Title[5]

17  _____

18          [4]  Although the parties in their briefing appear to
    interpret plaintiff's rescission claim as alleging both state-law
19  rescission due to fraud and rescission pursuant to TILA (see
    Opp'n 13-16; Reply 7-8), a plain reading of the Complaint does
20  not make this interpretation readily apparent (see Compl. 11-12).
    Indeed, plaintiff has styled his "third cause of action" as a
21  claim for "Rescission/Cancellation" under "California Civil Code
    [section] 1689" and does not mention TILA under this heading.
22  (See id.)  Apparently, through "incorporat[ion] by reference[],"
    plaintiff's rescission claim also involves rescission under TILA
23  because TILA is mentioned sporadically throughout the Complaint.
    (Id. ¶ 43; see id. ¶¶ 11, 22, 29, 31-32.)  If and when plaintiff
24  files an amended complaint consistent with this Order, he is
    admonished to more precisely set forth the nature of his
25  rescission claim.

26          [5]  Although California law requires that a quiet title
    claim be pled in a verified complaint, see Cal. Civ. Proc. Code.
27  § 761.020, defendants appear to acknowledge that this requirement
    is merely "procedural" in nature (Mem. Supp. Mot. Dismiss 18:26).
28  Consequently, this requirement is irrelevant to the integrity of
    plaintiff's claim in federal court.  See, e.g., Hanna v. Plumer,

                                19

Under California law, a claim for quiet titled must include (1) a description of the property that is the subject of the action, (2) the title of the plaintiff as to which a determination under this chapter is sought and the basis of the title, (3) the adverse claims to the title of the plaintiff against which a determination is sought (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. Cal. Civ. Proc. Code. § 761.020.

Here, plaintiff has provided the address of the real property at issue and has sufficiently alleged his interest in the property as well as the nature of the adverse claim against it. See Twain Harte Homeowners Ass'n v. Patterson, 193 Cal. App. 3d 184, 188 (1987) ("It is sufficient if a plaintiff alleges an interest in the property and the adverse claim or claims against which it seeks a determination." (citing Cal. Civ. Proc. Code § 761.020)). A court may presume that the date as of which determination of title is sought is the date of the complaint, see Cal. Civ. Proc. Code § 761.020(d), and plaintiff's Complaint expressly prays for a determination of title against any adverse claims (see Compl. ¶ 70). Accordingly, the court will deny defendants' motion to dismiss with respect to plaintiff's claim for quiet title.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion to dismiss plaintiff's Complaint be, and the same hereby is, GRANTED as to plaintiff's request for

---

380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law.").

a declaratory judgment that defendants EMC and MERS "do not have the right" to initiate a foreclosure proceeding;

(2) Defendants' motion to dismiss plaintiff's Complaint be, and the same hereby is, GRANTED as to plaintiff's claim against EMC for breach of the implied covenant of good faith and fair dealing;

(3) Defendants' motion to dismiss plaintiff's Complaint be, and the same hereby is, GRANTED as to plaintiff's claim against EMC for rescission;

(4) Defendants' motion to dismiss plaintiff's Complaint be, and the same hereby is DENIED with respect to all other claims;

AND IT IS FURTHER ORDERED that plaintiff's allegations concerning defendant MERS's status as a "suspended California corporation" be, and the same hereby are, STRICKEN.

Plaintiff has thirty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.

DATED:  April 30, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE